UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
MURIEL OLLIVIERRE,

Plaintiff,

-against-

PLATO LEARNING, INC.,

Defendant.
-------------------------------------------------------X

06 CV 9387

JUDGE SCHEINDLIN

Civil Action No.

COMPLAINT and JURY DEMAND

OCT 13 2006

U.S.D.C. S.D. N.Y.

COMES NOW Plaintiff, Muriel Ollivierre ("Plaintiff" or "Ollivierre"), by and

through her undersigned attorneys, The Law Offices of Neal Brickman, P.C., 317 Madison

Avenue, 21st Floor, New York, New York 10017, and as and for her Complaint against

defendant, PLATO Learning, Inc. ("Defendant" or "PLATO"), states and alleges the following:

## NATURE OF ACTION

1.    Plaintiff is an African American woman in her mid-sixties. This is an

action for damages arising from Defendant's illegal discriminatory and disparate treatment of

Plaintiff under the New York City and New York State anti-discrimination laws for which she

seeks the award of compensatory and punitive damages, together with the costs in this action,

including her reasonable attorneys' fees.

## THE PARTIES

2.    Muriel Ollivierre is a individual residing at 179 Bennett Avenue, Apt. #4J,

New York, New York 10040. She is sixty-six years old.

3.    PLATO has its headquarters and principal offices located at 10801 Nesbitt

Avenue South, Bloomington, Minnesota 55437. PLATO incorporated its business in the State of

Delaware. PLATO is a educational software company that provides courseware and instructional content for kindergarten through adult learners.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, because this matter is brought in diversity. Ms. Ollivierre resides in the State of New York. PLATO is headquartered in the State of Minnesota and incorporated in the State of Delaware. The matter in controversy, as set forth in greater detail below, exclusive of interest and costs, exceeds the sum or value of $75,000.00.

5.      Venue is proper in the Southern District of New York because Plaintiff resides in New York City, the majority, if not all, of the acts giving rise to Ms. Ollivierre's claims took place in New York City, and Ms. Ollivierre suffered injury in the State of New York. Moreover, PLATO is a national company which maintains multiple offices throughout the United States. The majority of PLATO's employees work from their respective homes or home offices.

## FACTUAL BACKGROUND

1.      In 1997, Ms. Ollivierre began working for Lightspan, Inc. ("Lightspan"), an educational consulting company. Lightspan provided educational support and materials for grades kindergarten through eighth. At that time, Ms. Ollivierre was an educational consultant. In 1999, Ms. Ollivierre was promoted, and she became the Director of Program Evaluation. In that position, Ms. Ollivierre's duties were primarily involved with the evaluation or the effectiveness of programs and with the development or customization of other programs to be marketed. She continued to hold this position until 2003, at which time PLATO purchased Lightspan and merged Lightspan's operation with its own.

2

2.    While at Lightspan, Ms. Ollivierre worked directly with many sales representatives and specifically with the two primary sales representatives assigned to her.   Sales and marketing represented a key focus at Lightspan and was part of Ms. Ollivierre's job duties and responsibilities.

3.    In 2003, at the time PLATO acquired Lightspan, PLATO employed Ms. Ollivierre as the Director of Program Evaluation, the same position that she held at Lightspan, a position in which she continued until June 30, 2006.

4.    Upon receiving the position at PLATO, Bernice Stafford, her immediate supervisor, directed Ms. Ollivierre to stop coordinating her efforts with the sales department. According to Ms. Stafford, sales and marketing were not part of Ms. Ollivierre's position at PLATO.

5.    In her capacity as Director of Program Evaluation, and at each evaluation period, PLATO rated Ms. Ollivierre in her job performance as "exceptional."   With each opportunity, Ms. Ollivierre exceeded the expectations set for her.   Additionally, she exceeded the scope of her assigned job duties.   In particular, and by way of example only, Ms. Ollivierre assisted the sales and marketing team at PLATO.   Ms. Ollivierre reported, on a monthly basis, her collaboration and contribution to the sales and marketing team.

6.    Specifically, Ms. Ollivierre closely worked with Elyse August, a PLATO sales representative, in order to increase sales and better market PLATO's products and services.

7.    Ms. Ollivierre received positive and enthusiastic feedback for her help of the sales department, as well as glowing praise from Ms. August.   Ms. Ollivierre's reviews were uniformly positive in all aspects.

3

8.     Upon information and belief, PLATO engaged in a pattern of acquiring similar businesses or competing businesses, such as Lightspan.

9.     Upon information and belief, upon acquiring a new company, PLATO evaluated each employee's performance and potential contribution to PLATO during the merger process.

10.    Upon information and belief, PLATO engaged in a pattern of terminating, laying off, or restructuring out, older, more educated, more experienced and higher paid employees from not only its own company, but in particular and specifically, employees within the companies that PLATO acquired.

11.    PLATO systematically hired younger, less expensive, less educated, less experienced workers to replace its older, more educated, more experienced workers.

12.    Upon information and belief, part of PLATO's pattern of conduct in shedding its older employees is that it restructures its internal departments and organization expressly in order to terminate, layoff or manage out, its older employees.

13.    Times or periods of layoffs, restructuring and/or reorganization, resulted in the disproportionate termination of its older employees, all the while PLATO continued to hire younger and less experienced employees.

14.    On June 13, 2006, Ms. Ollivierre was informed that her position would be terminated as of June 30, 2006. Ms. Ollivierre was further advised that her entire department was being eliminated.

15.    At the time of her termination, PLATO informed Ms. Ollivierre that the termination resulted from a business decision and, in particular, that the company experienced a

4

loss of approximately twenty-five million dollars ($25,000,000.00) in the second quarter.

16.   Ms. Ollivierre later learned that despite the purported financial crises, PLATO continued to hire younger employees. Moreover, she learned the that company's purported losses were greatly and knowingly exaggerated, indeed more than doubled, in order to bolster the company's claim of financial hardship.

17.   PLATO continued to hire younger employees after Ms. Ollivierre's termination despite its pretext of financial difficulties. Moreover, under the guise of a "new" job description that was remarkably similar to the job performed by Plaintiff but for the pay grade, PLATO knowingly and intentionally filled Plaintiff's position with a younger employee.

18.   Upon information and belief, Plaintiff was knowingly and intentionally fired so that her job could be filled by a younger employee.

19.   Upon information and belief, all of the employees hired by PLATO since Ms. Ollivierre's termination are under the age of thirty. Moreover, upon information and belief, PLATO conscientiously hires younger employees.

20.   All, or most, of the employees terminated by PLATO in June 2006 were employees over the age of fifty. The layoffs executed by PLATO in June 2006 disproportionately impacted employees over the age of fifty.

21.   Upon information and belief, the terminations in June 2006 were typical of PLATO in that PLATO terminated, restructured or laid off its employees over the age of fifty, all the while hiring younger employees to fill the same or similar positions.

22.   PLATO knowingly and intentionally transitioned the job functions of Ms. Ollivierre's position and her entire department to younger employees and/or hired younger

5

employees to fill the positions.

    23.    Ms. Ollivierre was terminated by PLATO solely because of her age.

## COUNT I
## EMPLOYMENT DISCRIMINATION
(Discrimination based upon age in violation of
New York Executive Law § 296)

    24.    Plaintiff repeats, reiterates and re-alleges each and every allegation set forth

in paragraphs "1" through "23" of this Complaint with the same force and effect as if fully set

forth herein at length.

    25.    PLATO constitutes an employer within the meaning of the New York

Executive Law §296.

    26.    Section 296 of the New York Executive Law protects employees from

discrimination, and disparate treatment, based on age.

    27.    Ms. Ollivierre is a United States citizen and resident of the City of New

York.

    28.    Ms. Ollivierre worked for PLATO in the City of New York

    29.    Upon information and belief, Ms. Ollivierre was treated differently from

similarly situated younger employees in like circumstances who remained employed at PLATO or

who were hired after Ms. Ollivierre's termination.

    30.    Upon information and belief, but for Ms. Ollivierre's age, her status as a

sixty-six year old employee, Ms. Ollivierre would not have been terminated.

    31.    Upon information and belief, Ms. Ollivierre's age and the age of her

department was the sole reason that her position was eliminated.

6

32.    Ms. Ollivierre's job function and responsibilities were reassigned to younger employees and/or filled by younger employees hired by PLATO after her termination.

33.    PLATO claimed that its termination of Ms. Ollivierre's position and her department was related to the company's second quarter loss. The second quarter loss, however, was grossly and deliberately exaggerated to serve this pretextual purpose.

34.    Upon information and belief, all departments within PLATO were equally effected by the company's second quarter loss, however, only Ms. Ollivierre's department was eliminated.

35.    PLATO continued to hire younger employees after eliminating Ms. Ollivierre's job and department, despite its pretext of financial difficulties.

36.    Upon information and belief, PLATO is a disproportionally young company because it deliberately and willfully hires younger employees while terminating its older employees.

37.    PLATO engaged in a pattern of discrimination against its older employees. PLATO discriminated against Ms. Ollivierre, and treated her differently than other similarly situated employees in like circumstances, because of her age.

38.    PLATO acted willfully, knowingly, and intentionally and was motivated solely by Ms. Ollivierre's age.

39.    PLATO lacks any reason to justify Ms. Ollivierre's termination -- but for her age -- in that she was a stellar and an exceptional employee, and that PLATO offered a job remarkably similar to Ms. Ollivierre's position immediately following her termination.

40.    Other departments with younger employees were given a sales and

7

marketing goal and/or incentive to reach, and were not terminated, or otherwise effected by the lay-off in June 2006.

41. Other departments within PLATO continued to hire younger employees, mostly under the age of thirty, during what PLATO described as its financial crisis.

42. Section 296 of the New York Executive Law prohibits discrimination on the basis of age.

43. The acts and events described above constitute unlawful discrimination and disparate treatment based on age in direct contravention of §296 of the New York Executive Law.

44. PLATO's treatment of Ms. Ollivierre was knowing, wilful and intentional, and solely motivated by Ms. Ollivierre's age.

45. As a direct and proximate result of this conduct, Ms. Ollivierre has suffered economic injury and harm.

46. PLATO's conduct was intentional, knowing and wilful and as a result warrants an assessment of punitive damages.

**WHEREFORE,** Ms. Ollivierre respectfully demands judgment against PLATO for compensatory and punitive damages in an amount to be determined at trial, but in no event less than three hundred and fifty thousand dollars ($350,000.00); the costs and disbursements of this action (including her reasonable attorneys' fees), and any such other and further relief to Ms. Ollivierre as this Court deems just, fair, and proper.

8

## COUNT II
## EMPLOYMENT DISCRIMINATION
(Discrimination based upon age in violation of
New York City Administrative Code § 8-502)

47.     Plaintiff repeats, reiterates and re-alleges each and every allegation set forth in paragraphs "1" through "46" of this Complaint with the same force and effect as if fully set forth herein at length.

48.     New York City Administrative Code § 8-502 prohibits unlawful discrimination and disparate treatment based upon age.

49.     Ms. Ollivierre worked for PLATO within the City of New York.

50.     PLATO constitutes an employer subject to the New York City Administrative Code.

51.     PLATO engaged in a pattern and practice of conduct resulting in unlawful discrimination, whereby Ms. Ollivierre was discriminated against because of her age.

52.     PLATO treated Ms. Ollivierre differently than similarly situated younger employees in like circumstances.

53.     Upon information and belief, but for Ms. Ollivierre's age, her status as a sixty-six year old employee, Ms. Ollivierre would not have been terminated. Ms. Ollivierre's age was the sole reason that she was terminated from PLATO.

54.     As a direct and proximate result of PLATO's conduct, Ms. Ollivierre suffered injury and harm.

55.     At all times, PLATO acted willfully, knowingly and intentionally. PLATO's wrongful conduct warrants an assessment of punitive damages and the award of

9

reasonable attorneys' fees.

　　　　　**WHEREFORE**, Ms. Ollivierre respectfully demands judgment against PLATO

for compensatory and punitive damages in an amount to be determined at trial, but in no event

less than three hundred and fifty thousand dollars ($350,000.00); the costs and disbursements of

this action (including her reasonable attorneys' fees), and any such other and further relief to Ms.

Ollivierre as this Court deems just, fair, and proper.

### JURY DEMAND

　　　　　56.　　Plaintiff hereby demands a trial by jury, pursuant to Fed. R. Civ. P., Rule

38(b).

Dated: New York, New York
　　　October *13*, 2006

　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　THE LAW OFFICES OF NEAL BRICKMAN, P.C.

　　　　　　　　By:　　_____
　　　　　　　　　　　　Neal Brickman (NB 0874)
　　　　　　　　　　　　Melinda Dus (MD 5613)
　　　　　　　　　　　　317 Madison Avenue, 21st Floor
　　　　　　　　　　　　New York, New York 10017
　　　　　　　　　　　　Telephone:　(212) 986-6840
　　　　　　　　　　　　Facsimile:　(212) 986-7691
　　　　　　　　　　　　Email:　　　neal@bricklaw.net
　　　　　　　　　　　　　　　　　melindam@bricklaw.net

10